UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JAMES THOMAS CASEY-EDDINGS,          )
                                     )   No. CV-09-088-CI
          Plaintiff,                 )
                                     )
v.                                   )   ORDER GRANTING DEFENDANT'S
                                     )   MOTION FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE,                   )   AND DENYING PLAINTIFF'S
Commissioner of Social               )   MOTION FOR SUMMARY JUDGMENT
Security,                            )
                                     )
          Defendant.                 )
                                     )
                                     )
─────────────────────────────────── )

     BEFORE THE COURT are cross-Motions for Summary Judgment.  (Ct.
Rec. 18, 24.)   Attorney Rebecca M. Coufal represents Plaintiff;
Special Assistant United States Attorney Kathryn A. Miller represents
Defendant.  The parties have consented to proceed before a magistrate
judge.  (Ct. Rec. 7.)  After reviewing the administrative record and
briefs filed by the parties, the court **DENIES** Plaintiff's Motion for
Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

                            **JURISDICTION**

     Plaintiff James T. Casey-Eddings (Plaintiff) protectively filed
for supplemental security income (SSI) on January 14, 2005. (Tr. 61,
72.)  Plaintiff alleged an onset date of December 7, 1983. (Tr. 61.)
Benefits were denied initially and on reconsideration. (Tr. 28, 33.)
Plaintiff requested a hearing before an administrative law judge
(ALJ), which was held before ALJ William Horton on March 7, 2007.
(Tr. 321-51.)  Plaintiff was represented by counsel and testified at

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

the hearing. (Tr. 326-49.) Vocational expert Francene Geers also testified. (Tr. 350.) A supplemental hearing was held on June 19, 2007. (Tr. 309-20.) Plaintiff and vocational expert Francene Geers testified. (Tr. 312-19.) The ALJ denied benefits (Tr. 15-24) and the Appeals Council denied review. (Tr. 5.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, and will therefore only be summarized here.

At the time of the first hearing, Plaintiff was 49 years old. (Tr. 326.) Plaintiff went to school through his junior year, then dropped out to join the Air Force, where he got his GED. (Tr. 161.) He has attended some college and is a few credits short of an associate of arts degree in communications. (Tr. 326.) He has worked as the manager of an RV park, a movie theater manager, janitor in a restaurant, and in radio. (Tr. 326-27.) Plaintiff testified he has not been able to work since his son died because he "kind of lost his mind." (Tr. 327.) Additionally, Plaintiff testified he has problems with pain in his neck and back, including twitching, numbness, cramping, aching, pins and needles and heat flashes. (Tr. 331-32.) Memory loss and euphoria are side effects of his medications. (Tr. 332.) Plaintiff has bunions, migraine headaches, tinnitus, hydrocele, TMJ, separated shoulder, bowel and stomach problems, and gastric reflux disease. (Tr. 333-38.) He testified he suffers from depression, paranoia, low self esteem, trouble sustaining relationships and "the shakes." (Tr. 338-45.)

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still

be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

1 | 404.1520(a)(4)(I), 416.920(a)(4)(I).

2 | If the claimant is not engaged in substantial gainful activities,
3 | the decision maker proceeds to step two and determines whether the
4 | claimant has a medically severe impairment or combination of
5 | impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If
6 | the claimant does not have a severe impairment or combination of
7 | impairments, the disability claim is denied.

8 | If the impairment is severe, the evaluation proceeds to the third
9 | step, which compares the claimant's impairment with a number of listed
10 | impairments acknowledged by the Commissioner to be so severe as to
11 | preclude substantial gainful activity. 20 C.F.R. §§
12 | 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App.
13 | 1. If the impairment meets or equals one of the listed impairments,
14 | the claimant is conclusively presumed to be disabled.

15 | If the impairment is not one conclusively presumed to be
16 | disabling, the evaluation proceeds to the fourth step, which
17 | determines whether the impairment prevents the claimant from
18 | performing work he or she has performed in the past. If plaintiff is
19 | able to perform his or her previous work, the claimant is not
20 | disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At
21 | this step, the claimant's residual functional capacity ("RFC")
22 | assessment is considered.

23 | If the claimant cannot perform this work, the fifth and final
24 | step in the process determines whether the claimant is able to perform
25 | other work in the national economy in view of his or her residual
26 | functional capacity and age, education and past work experience. 20
27 | C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482
28 | U.S. 137 (1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 14, 2005, the application date.  (Tr. 17.)  At step two, he found Plaintiff has the following severe impairments: cervical pain status post surgery; lumbar spine degenerative disc disease; depressive disorder NOS; and borderline personality disorder.  (Tr. 17.)  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 17.)  The ALJ then determined:

> [C]laimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; walk 2 hours in an 8 hour workday; no general public contact; and limited to simple routine tasks with no frequent co-worker contact.

(Tr. 18.)  At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (Tr. 22.)  After considering Plaintiff's age, education, work experience, residual functional capacity and the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

1  testimony of a vocational expert, the ALJ found there are jobs that
2  exist in significant numbers in the national economy that Plaintiff
3  can perform.  (Tr. 23.)   Thus, the ALJ concluded Plaintiff has not
4  been under a disability, as defined in the Social Security Act, since
5  January 14, 2005, the date the application was filed.  (Tr. 24.)

6                                    **ISSUES**

7       The question is whether the ALJ's decision is supported by
8  substantial evidence and free of legal error.  Specifically, Plaintiff
9  asserts the ALJ: (1) failed to fully and fairly develop the record;
10 (2) made an unsupported credibility finding; (3) erred at step two by
11 failing to list post traumatic stress disorder as a severe impairment;
12 and (4) improperly rejected medical evidence.  (Ct. Rec. 19 at 8-17.)
13 Defendant argues the ALJ: (1) fully and fairly developed the record;
14 (2) properly found Plaintiff not credible; (3) properly determined
15 Plaintiff's severe impairments; and (4) properly rejected medical
16 evidence.  (Ct. Rec. 25 at 15-23.)

17                                 **DISCUSSION**

18 **1.   Duty to Develop the Record**

19      Plaintiff argues the ALJ failed to expand the record regarding
20 Plaintiff's prior back surgeries, psychiatric hospitalizations,
21 counseling and disability allowance.  (Ct. Rec. 19 at 9.)  In Social
22 Security cases, the ALJ has a special duty to develop the record fully
23 and fairly and to ensure that the claimant's interests are considered,
24 even when the claimant is represented by counsel.   *Tonapetyan v.*
25 *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713
26 F.2d 441, 443 (9th Cir. 1983).   *Id.*  An ALJ's duty to develop the
27 record further is triggered only when there is ambiguous evidence or
28 when the record is inadequate to allow for proper evaluation of the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

At the first hearing in March 2007, Plaintiff testified that he had previously undergone a total of three back surgeries: a lumbar surgery in California in 1984; a cervical surgery involving the placement of a plastic disc, shortly after the first surgery in 1984; and a second cervical surgery in 1999 or 2000 in Texas.  (Tr. 329-30.) The ALJ observed that the record did not contain any documentation of those surgeries.  (Tr. 330.)  At that time, the record contained a questionnaire completed by Dr. Yeh, a treating physician, which noted significant restrictions in Plaintiff's ability to work, but did not include Dr. Yeh's office visit notes. (Tr. 265-67, 324-325.)  The ALJ discussed obtaining records of the previous back surgeries with Plaintiff's counsel and stated, "Well I think it's fairly important . . . to the extent this case seems to bear a lot on Dr. Yeh's statement and if he's had that level of surgery treatment it would be in his favor for me to know that for certain."  (Tr. 330-31.)  At the conclusion of the first hearing, Plaintiff's counsel indicated she would get the additional records to the ALJ as soon as possible.  (Tr. 350.)

In April 2007, the ALJ wrote to Plaintiff's counsel indicating receipt of treatment records from Dr. Yeh and requesting additional records pertaining to surgery of Plaintiff's low back or neck.  (Tr. 134.)  Counsel replied on May 24, 2007, and indicated that the 1999 surgery record was available, but documentation of earlier surgeries was not available because the hospital destroys records more than 10 years old.  (Tr. 301.)

At the supplemental hearing in June 2007, the ALJ reviewed the new additions to the record.  (Tr. 310.)  Plaintiff's counsel

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

suggested additional records might be available from Plaintiff's worker's compensation claim or a previous Social Security file. (Tr. 310-11.) The ALJ then observed that the 1999 surgical record notes no prior surgeries.[1] (Tr. 303, 305, 311.) The ALJ also pointed out that an October 2006 MRI of the lumbar region did not note any signs of prior surgery. (Tr. 299, 311.) The ALJ then said,

> [A]t this point in time, I still regard the record as not convincing that there was a prior lumbar surgery. If you want to ask your client more questions on that to try and pinpoint it, I would allow that. Irrespective, it obviously was quite a while ago if it did occur . . . ."

(Tr. 311.) When asked if he had any surgeries before the 1999 surgery, Plaintiff testified that he had a fusion on his lower back and an umbilical hernia repair. (Tr. 312.) At the end of the hearing, the ALJ stated, "For my purposes, this completes the record development and I'm going to be reviewing the case and then issue a written decision. Notwithstanding . . . if you still are able to come up with any other historical records, you're welcome to send those in." (Tr. 319.)

The court concludes the ALJ adequately developed the record with respect to Plaintiff's back surgeries. The ALJ provided reasonable opportunity for Plaintiff to produce records of prior surgeries, including prompting counsel on the issue by letter. The ALJ noted inconsistencies between the records produced and Plaintiff's testimony regarding additional surgeries, and reasonably concluded there was

---

[1] Plaintiff explained this note in the surgical record meant no prior cervical surgery. (Tr. 311.) However, at the first hearing, Plaintiff testified that he had a prior cervical surgery in 1984. (Tr. 329-30.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –9

little evidence of prior surgeries.  The alleged lumbar surgery occurred quite some time in the past, and the ALJ determined that even if he accepted Plaintiff's testimony regarding lumbar spinal surgery in addition to the 1999 cervical surgery, the most current MRI studies in October 2006 show only mild to moderate degenerative disc disease. (Tr. 22.)  The ALJ further concluded there are "no clinical findings to corroborate the extent of claimant's reported pain symptomatology." (Tr. 22.)  It is evident that the ALJ considered further development of the record and concluded the record was not ambiguous or inadequate to make a determination regarding Plaintiff's limitations and abilities.  Thus, the ALJ's duty to further develop the record was not triggered.

Plaintiff's argument that the ALJ should have developed the record with respect to Plaintiff's alleged prior psychiatric hospitalizations and treatment, as well as a prior Social Security claim, is also without merit.  As noted by Defendant, although Plaintiff "spoke of" psychiatric hospitalizations and counseling, the ALJ found Plaintiff is not credible and there is no evidence or testimony that suggests the outcome of this matter would be different, even if additional records were located.  Plaintiff has not demonstrated where the record is ambiguous or inadequately developed. He argues only that additional records "could support Eddings's statements and provide more information regarding his veracity." (Ct. Rec. 19 at 9.)  The ALJ cited other evidence supporting the credibility finding, discussed below, so additional development of the record for that purpose would be moot.  Based on the foregoing, the ALJ's did not err by failing to further develop the record.

**2.   Credibility**

Plaintiff argues the ALJ's credibility finding is not based on substantial evidence in the record.   (Ct. Rec. 19 at 10-12.)   In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.   20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.   20 C.F.R. § 4416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id*. at 346.   The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition.  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

In this case, the ALJ found Plaintiff is not credible. (Tr. 21.) The ALJ noted evidence of possible malingering. (Tr. 20.) Dr. Weimer, who saw Plaintiff twice at the Bay Area Hospital for psychiatric admission, noted Plaintiff is a "wholly unreliable historian." (Tr. 237.) Dr. Weimer reported that David Bertapelli, Plaintiff's counselor, met with Plaintiff in the emergency room and, "It was felt that the patient had an agenda of being hospitalized to help with his upcoming Disability Hearing." (Tr. 237.) Dr. Weimer concluded that Plaintiff was malingering to try to obtain Social Security benefits. (Tr. 20, 238.) Thus, there is affirmative evidence of malingering, and the ALJ could have reasonably concluded Plaintiff is not credible on that basis alone. *See, e.g., Benton v. Barnhart,* 331 F.3d 1030, 1040-41 (9th Cir. 2003).

Plaintiff's only argument regarding the credibility finding is that Dr. Weimer did not conduct any psychological testing or review counseling records before diagnosing malingering. (Ct. Rec. 19 at 12.) However, Dr. Weimer's report contains the result of a mental

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

status examination and details inconsistencies in Plaintiff's reported symptoms and true psychotic phenomena. (Tr. 237-39.) Additionally, Dr. Weimer obtained information from Mr. Bertapelli regarding Plaintiff's status and history. (Tr. 237.) The ALJ's consideration of Dr. Weimer's opinion in making the credibility finding was appropriate, and the ALJ did not rely on Dr. Weimer's malingering diagnosis alone in making the credibility determination.

In addition to the malingering evidence, the ALJ noted the record shows a pattern of exaggeration by Plaintiff to medical providers or others regarding his medical history. (Tr. 21.) "One strong indicator of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. . . . Especially important are statements made to treating and examining sources and to the 'other sources.'" S.S.R. 96-7p. The ALJ discussed Plaintiff's inconsistent reports to various providers about his prior back surgeries, including self-reports of cervical spine surgery at C2-3; three operations to the cervical spine; two operations to the cervical spine; spinal disc replacement of the cervical spine; multiple spinal surgeries; and lumbar fusion at L2-3. (Tr. 21, 134, 136, 192, 263, 288, 291, 293.) The ALJ also pointed out there are no clinical findings or reports corroborating his allegation of "multiple" spinal surgeries. (Tr. 22.)

Additional facts mentioned by the ALJ and supporting the credibility finding include Plaintiff's testimony that he was bedridden three days of the week, but a third party report indicated that Plaintiff went outside at least once a day. (Tr. 22, 79, 343.) Furthermore, notwithstanding the malingering diagnosis, the observations of Plaintiff's behavior in Dr. Weimer's reports support

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

the ALJ's credibility finding.  (Tr. 20, 237-39, 262.) As a result, the ALJ's credibility finding is supported by clear and convincing evidence, and the ALJ did not err.

**3.   Step Two**

Plaintiff argues the ALJ erred by not finding post-traumatic stress disorder a severe impairment at step two.  (Ct. Rec. 19 at 13-14.)  At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To satisfy the step two requirement of a severe impairment, a claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  S.S.R. 85-28.  The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).  "The severity requirement cannot be satisfied when medical evidence shows that the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28.  Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.*

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities.  20 C.F.R. § 416.929.  If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process.  *Id.*

As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (S.S.R. 85-28.)  Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

Plaintiff argues that the opinions of Dr. Wahl and Joanne Rutland establish PTSD as a severe impairment. (Ct. Rec. 19 at 13-14.)  Dr. Wahl, an examining psychologist, prepared a psycho-diagnostic evaluation on August 8, 2005. (Tr. 160-64.)  Dr. Wahl diagnosed major depressive disorder, recurrent, severe with psychotic symptoms; R/O [rule out][2] posttraumatic stress disorder; and personality disorder not

---

[2]Defendant cites several cases indicating that a "rule out" diagnosis means there is evidence that the criteria for a diagnosis

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

otherwise specified with borderline and paranoid features.  Dr. Wahl assessed a GAF score of 49.[3]  He noted "strong elements of PTSD" but qualified the diagnosis of PTSD with the "rule out" notation.

The ALJ pointed out that Dr. Wahl indicated his diagnoses were based on presentation and self-report. (Tr. 19, 164.)  The ALJ made a properly supported negative credibility finding, which calls into question conclusions based on Plaintiff's self-report.  The ALJ noted that treating sources Dr. Weimer and David Bertapelli both suggested Plaintiff is unreliable and his motives are questionable with respect to presentation and self-report. (Tr. 19, 237-39, 262.)  Because Dr. Wahl's PTSD diagnosis was a provisional diagnosis, and because it was based on Plaintiff's discredited reports, the ALJ properly excluded Dr. Wahl's PTSD diagnosis from his step two findings.

---

may be met, but more information is needed in order to rule it out. *See U.S. v. Grape*, 549 F.3d 591, 593-94 n.2 (3rd Cir. 2008); *Williams v. U.S,*, 747 F. Supp 967, 978 n.19 (S.D. N.Y 1990); *Simpson v. Comm.*, 2001 WL 213762, *7-8 (D. Or. 2001) (unpublished opinion).  See also Wayne G. Siegel, *Differential Diagnosis of Substance Use Disorders and Other Psychiatric Disorders*, Gary L. Fischler and Associates, PA, http://www.psycheval.com/substance%20use_disorders.shtml  (last visited April 14, 2010) ("Although not part of the formal DSM-IV convention, many clinicians use the term 'rule out' just prior to a diagnosis to indicate that not enough information exists to make the diagnosis, but it must be considered as an alternative.").

[3]A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16

Plaintiff also argues the opinion of Joanne Rutland, a psychiatric mental health nurse practitioner, establishes PTSD as a severe impairment.  (Ct. Rec. 19 at 13-14.)   Ms. Rutland began treating Plaintiff in November 2006.  (Tr. 192.)   Ms. Rutland diagnosed borderline personality disorder, major depressive disorder, PTSD and a history of polysubstance dependence in remission.  (Tr. 268.)  The ALJ gave less weight to Ms. Rutland's opinion.

In a disability proceeding, the ALJ must consider the opinions of acceptable medical sources.  20 C.F.R. §§ 404.1527(d), 416.927(d); S.S.R. 96-2p; S.S.R. 96-6p.  Acceptable medical sources include licensed physicians and psychologists.[4]  20 C.F.R. §§ 404.1513(a), 416.913(a).  In addition to evidence from acceptable medical sources, the ALJ may also use evidence from "other sources" including nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).

Social Security Ruling 06-3p summarizes regulations providing that only an acceptable medical source can: (1) establish the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source.  Evidence from other sources can be used to determine the severity of an impairment and how it affects the ability to work.  S.S.R. 06-3p; 20 C.F.R. §§ 404.1513(d), 416.913(d).  "Information from other sources

---

[4]Other acceptable medical sources are licensed podiatrists and optometrists and qualified speech-language pathologists, in their respective areas of specialty only.  20 C.F.R. §§ 404.1513(a), 416.913.(a).

cannot establish the existence of a medically determinable impairment.
. . . However, information from 'other sources' may be based on
special knowledge of the individual and may provide insight into the
severity of the impairment(s) and how it affects the individual's
ability to function." S.S.R. 06-3p.

As an "other source" opinion, Ms. Rutland's diagnosis is not
sufficient to establish the existence of PTSD as a medically
determinable impairment. Additionally, the ALJ properly rejected Ms.
Rutland's opinion. An ALJ must give reasons germane to "other source"
testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th
Cir. 1993). Inconsistency with medical evidence is a germane reason
for rejecting lay witness evidence. *Bayliss v. Barnhart*, 427 F.3d
1211, 1218 (9th Cir. 2005). Here, the ALJ explained in detail how Ms.
Rutland's opinion is inconsistent with the record in several ways.
(Tr. 21.) Plaintiff does not challenge the weight given to Ms.
Rutland's report or the reasons asserted by the ALJ in rejecting it.
Thus, Ms. Rutland's report does not establish PTSD as a severe
impairment.

Plaintiff also suggests the GAF scores assessed by Drs. Wahl and
Weimer, as well as by Ms. Rutland, support PTSD as a severe
impairment.[5] (Ct. Rec. 19 at 14.) The Commissioner has explicitly
disavowed use of GAF scores as indicators of disability. "The GAF
scale . . . does not have a direct correlation to the severity
requirements in our mental disorder listing." 65 Fed. Reg. 50746-01,
50765 (August 21, 2000). Furthermore, the GAF scores do not correlate

---

[5]Dr. Wahl assessed a GAF of 49; Dr. Weimer assessed a GAF of 48;
Joanne Rutland assessed a GAF of 40. (Tr. 163, 239, 268.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18

to PTSD, as Dr. Weimer did not diagnose PTSD and Dr. Wahl noted "rule out" PTSD.  Thus, the GAF scores do not support Plaintiff's argument that PTSD should have been a severe impairment.

Finally, even if the ALJ should have included PTSD as a severe impairment, the error would be harmless.  Errors that do not affect the ultimate result are harmless.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).  Plaintiff points to no additional limitations due to PTSD, and there is no evidence of any additional such limitations in the record.  Thus, even if PTSD was a severe impairment, the RFC finding and ultimate nondisability outcome would be unchanged.

**4.   Dr. Yeh**

Plaintiff suggests the ALJ erred by rejecting the opinion of Dr. Yeh, a treating physician.  In December 2006, Dr. Yeh completed a medical impairment questionnaire.  (Tr. 265-67.)  Dr. Yeh noted pain in Plaintiff's lower back, upper back and neck, with reduced range of motion in his neck, and tenderness in his neck and back.  (Tr. 265.)  He opined that Plaintiff's pain or other symptoms would frequently interfere with Plaintiff's attention and concentration needed for simple work tasks.  (Tr. 265.)  Dr. Yeh indicated Plaintiff would need unscheduled breaks every 30 to 60 minutes during an 8-hour workday.  (Tr. 266.)  Dr. Yeh indicated Plaintiff could walk 1-2 blocks without rest or severe pain, Plaintiff could stand or walk about 2 hours out of an 8-hour workday, and could sit about 4 hours in an 8-hour workday.  (Tr. 266.)  Dr. Yeh answered "unknown" when asked if Plaintiff would need periods of walking around during an 8-hour day, when asked how much weight Plaintiff can lift and carry in a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -19

competitive work situation, and when asked how many days per month Plaintiff is likely to be absent from work due to his impairments. (Tr. 266-67.)

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Dr. Yeh's opinion is contradicted by the opinion of Dr. Glassman, an examining physician. (Tr. 136-37.) Dr. Glassman opined Plaintiff should be able to work at light duty lifting 20 pounds occasionally, 10 pounds frequently, and should be able to walk at least two hours in a workday. (Tr. 137.) Thus, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence to properly reject Dr. Yeh's.

The first reason given by the ALJ for rejecting Dr. Yeh's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -20

assessment of limitations is that Dr. Yeh's responses to the medical impairment questionnaire are contradicted by his own treatment records. (Tr. 22.) A discrepancy between a physician's notes and recorded observations and opinions and the physician's assessment of limitations is a clear and convincing reason for not relying on the assessed limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). The ALJ pointed out that Dr. Yeh reported claimant had reduced range of motion in his neck, but his December 21, 2006, treatment records note, "No limitation of range of motion in limbs and neck; no tenderness or swelling in all joints; no tenderness on back percussion." (Tr. 22, 276.) In February 2007, Dr. Yeh noted Plaintiff's range of motion in his neck was only "slightly" limited. (Tr. 274.) These notes contradict Dr. Yeh's statement in the medical questionnaire indicating Plaintiff has reduced range of motion in his neck. The ALJ reasonably considered the discrepancy between Dr. Yeh's notes and his opinion on the medical questionnaire in rejecting Dr. Yeh's opinion.

Second, the ALJ pointed out that Dr. Yeh's opinion is not supported by clinical findings in the full record. (Tr. 22.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. As the ALJ indicated, "There are no clinical findings to corroborate the extent of claimant's reported pain symptomatology. Rather, the clinical findings support the view that the claimant has a tendency to vary and exaggerate his symptomatology

1    depending on the treating source." (Tr. 22.) Dr Yeh's own notes

2    indicate only mild MRI findings. (Tr. 277.) The ALJ reasonably

3    interpreted the evidence to conclude there is inadequate clinical

4    support for the limitations identified by Dr. Yeh. Thus, the ALJ

5    provided specific, legitimate reasons supported by substantial

6    evidence for rejecting Dr. Yeh's opinion.

7                                **CONCLUSION**

8        Having reviewed the record and the ALJ's findings, this court

9    concludes the ALJ's decision is supported by substantial evidence and

10   is not based on error. Accordingly,

11       **IT IS ORDERED:**

12       1. Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is

13   **GRANTED.**

14       2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 18)** is

15   **DENIED.**

16       The District Court Executive is directed to file this Order and

17   provide a copy to counsel for Plaintiff and Defendant. Judgment shall

18   be entered for Defendant and the file shall be **CLOSED.**

19       DATED April 27, 2010.

20

21                _____S/ CYNTHIA IMBROGNO_____
                  UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –22